UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-14363-CIV-CANNON/MAYNARD

JOSHUA BLISS HENKEL,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

**THIS CAUSE** is before me on Plaintiff's Motion for Summary Judgment [DE 34]; Defendant's Motion for Summary Judgment/Response [DE 39]; and Plaintiff's Reply [DE 40]. Having reviewed the pleadings, the administrative record, and having heard oral argument of counsel, I respectfully **RECOMMEND** that Defendant's administrative decision be **REVERSED AND REMANDED** for the reasons set forth below.

**BACKGROUND**

This case involves a determination of Plaintiff Joshua Bliss Henkel's ("Plaintiff") application for disability insurance benefits filed on July 30, 2018. Plaintiff alleged disability beginning on April 21, 2018[1] due to a combination of mental and physical impairments, including

---

[1] In his application, Plaintiff initially alleged a disability onset date of April 20, 2017. At a later administrative hearing, Plaintiff amended his alleged disability onset date to April 21, 2018. R. 11, 27.

generalized anxiety disorder, major depressive disorder, bipolar disorder–manic depression, degenerative disc disease (spondylosis) back, and hypertension.  R. 11, 207, 210, 269.[2]

Plaintiff was 52 years old on his alleged onset date and is a college graduate with past relevant work as a steward, a cooker helper, and a cake decorator.  R. 51-54, 211.  Plaintiff's application was denied initially, R. 66-101, and upon reconsideration, R. 104-17.  At Plaintiff's request, Administrative Law Judge ("ALJ") Mary Brennan held a hearing on October 22, 2019.  R. 25-62, 118-19.  The ALJ issued an unfavorable decision on December 24, 2019, finding Plaintiff not disabled from April 21, 2018 through the date of the decision.  R. 8-19.

On August 11, 2020, the Appeals Council denied Plaintiff's timely request for review, making the ALJ's decision the final decision of the Commissioner.  R. 1-5, 170-72.  Plaintiff has exhausted his administrative remedies and now seeks judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g).

## **STANDARD OF REVIEW**

To qualify for Social Security benefits, a claimant must show that he is disabled.  *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); 20 C.F.R. §§ 404.1512(a), 416.912(a).  The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is one that "results from anatomical, physiological, or

---

[2]  A 497-page certified transcript [DE 28-1] contains the entire administrative record.  The transcript index [DE 28-1 at 2-5] identifies each document or set of documents by exhibit number and description, all of which are bookmarked.  I will cite to the transcript as "R." followed by the page number(s) listed on the index and located at the bottom right-hand corner of each page.

psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

A disability benefits claim follows a multi-layered process before it can be reviewed in federal court. A claimant first applies to a state agency for disability determinations, 42 U.S.C. § 421(a), after which the claimant is entitled to an evidentiary hearing before an ALJ. *Heckler v. Day*, 467 U.S. 104, 106–07 (1984). An ALJ must perform a "five-step sequential evaluation" to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines if a claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"); (4) can perform past relevant work based on a residual functional capacity ("RFC") assessment; and (5) retains the ability to perform any work in the national economy. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018); *Hines–Sharp v. Comm'r of Soc. Sec.*, 511 Fed. Appx. 913, 915 n.2 (11th Cir. 2013). If an individual is found disabled or not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 416.920(a).

A claimant may appeal an ALJ's unfavorable decision to an Appeals Council that must review the case and determine if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Heckler*, 467 U.S. at 106-07; 20 C.F.R. § 404.970(a). After completing the foregoing administrative process, a claimant may seek review in federal court. 42 U.S.C. § 405(g); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007).

Under governing regulations provide, the Social Security Administration conducts its "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, social security administrative hearings "are inquisitorial rather than adversarial." *Washington*, 906 F.3d at 1364 (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

On review in federal court, the scope of review is limited to determining if (1) substantial evidence supports the Commissioner's findings, and (2) the correct legal standards were applied. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). To make this determination, a reviewing court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.*

In testing for substantial evidence, a court may not "reweigh the evidence" or "decide the facts anew." *Winschel*, 631 F.3d at 1178. Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive and the court must defer to the ALJ's decision even if

the evidence preponderates against it. *Crawford*, 363 F.3d at 1158-59. However, the court will not "merely rubber-stamp a decision ... [and] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1257 (11th Cir. 2019); *see also Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021) ("Within this narrowly limited role, however, the federal courts 'do not act as automatons' … '[w]e retain an important duty to 'scrutinize the record as a whole' and determine whether the agency's decision was reasonable") (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). Remand is appropriate for further factual development where the record reveals evidentiary gaps that result in unfairness or clear prejudice. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1358 (11th Cir. 2018).

A reviewing court is also required to review the ALJ's decision to determine if the correct legal standards were applied. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide sufficient reasoning for determining that the proper legal analysis has been conducted, then the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## **THE ALJ'S DECISION**

The ALJ in this case proceeded through the five-step analysis as follows: At step one, the AL found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of April 21, 2018. R. 13. At step two, the ALJ found that Plaintiff had the severe impairment of degenerative disc disease. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment in the Listings. R. 16. As a predicate to step four, the ALJ found that Plaintiff had the RFC to perform the full range of medium work as defined in 20 C.F.R. §

404.1567(c).  R. 16.  At step four, based on the RFC assessment and testimony of a vocational expert, the ALJ found that Plaintiff could perform his past relevant work as a cooker helper, steward, and cake decorator. R. 18.  Based on this step four finding, the ALJ did not proceed to step five and concluded that Plaintiff had not been disabled within the meaning of the Social Security Act from April 21, 2018 through the date of the decision.  R. 19.

## DISCUSSION

Plaintiff argues that the ALJ's decision must be reversed because (1) substantial evidence does not support the ALJ's step two finding that Plaintiff's bipolar disorder was non-severe; (2) the ALJ erred at step three in not finding that Plaintiff's bipolar disorder was of Listing-level severity; and (3) the ALJ erred by not assessing Plaintiff's mental impairments when determining Plaintiff's RFC.  Defendant disagrees, arguing that the ALJ's decision is supported by substantial evidence and the correct legal standards were applied.

The parties' arguments hinge on a review of the ALJ's assessment of Plaintiff's claimed mental impairments.  I have scrutinized the entire administrative record—with special attention to the objective medical evidence—and will discuss the relevant portions as necessary to address the issues presented.

### I. The ALJ's Assessment of Plaintiff's Mental Impairments

Plaintiff argues that his bipolar disorder is severe rather than a non-severe impairment and that the ALJ's contrary finding is not supported by substantial evidence.  In addition, Plaintiff argues that the ALJ's RFC "finding that [Plaintiff] could perform past work was erroneous given that it *was completely devoid of any analysis whatsoever* of [Plaintiff's] mental impairments." [DE 34 at 6] (emphasis in original).

Importantly, the Eleventh Circuit has squarely addressed the episodic nature of bipolar disorder in three recent decisions.  In *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019), the Eleventh Circuit found the ALJ's step two determination that bipolar disorder was not severe unsupported by substantial evidence considering the "episodic nature of" the disorder and the evidence of record that showed the disorder had more than a minimal effect on the claimant's ability to work.  *Id.* at 1268.  Because the RFC assigned by the ALJ did not reflect any mental limitations, the Eleventh Circuit found that the ALJ "evidently failed" to consider the mental impairments, including bipolar disorder, at step four.  *Id.* at 1269-70.  The Eleventh Circuit thus reversed the district court's decision on those issues and remanded the case.  *Id*. at 1270.

The following year, in *Samuels v. Comm'r of Soc. Sec.*, 959 F.3d 1042, 1047 (11th Cir. 2020), the episodic nature of bipolar disorder was again at issue. The ALJ there found bipolar disorder severe at step two but then "nowhere indicated that medical evidence suggested [the claimant's] ability to work was affected by that impairment."  *Id.* at 1047.  "Nor did any of the hypothetical restrictions implicitly account for [the claimant's] mental limitations as reflected in the record."  *Id.*  "In particular," the ALJ failed to "account for unexcused absences or time spent off-task, which were limitations caused by [the claimant's] bipolar disorder that were reflected in the record."  *Id.*  Hence, the Eleventh Circuit vacated and remanded the matter to the Commissioner to "account for the episodic nature of [the claimant's] bipolar disorder in determining her RFC and whether there are jobs in the national economy that [the claimant] can perform."  *Id.*

Last August, the Eleventh Circuit again addressed bipolar disorder in *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094 (11th Cir. 2021).  In *Simon*, the claimant stated that he was disabled due to various psychiatric conditions, including chronic depression, anxiety, and bipolar disorder.  *Id.* at 1097.  In denying disability benefits, "the ALJ gave little or no weight to three pieces of

evidence in the record indicating that [the claimant's] mental illness prevents him from maintaining a job: (1) the opinions of [the claimant's] treating psychiatrist, (2) the opinions of a consulting psychologist who examined [the claimant] at the request of the SSA, and (3) [the claimant's] own testimony as to the severity of his symptoms." *Id.* Instead, the ALJ relied upon "snapshot" reports of stability and progress by treating physicians to discount their opinions of disability as being inconsistent with the medical record. *Id.* at 1106. The Eleventh Circuit repeated *Schink's* cautionary note that "people with chronic diseases can experience good and bad days," and that treatment notes indicating "only mild limitations" should not be dismissed "simply because 'some of [the claimant's] mental-status examinations were better than others.'" *Id.* (quoting *Schink*, 935 F.3d at 1262). The Eleventh Circuit concluded "that the ALJ did not articulate adequate reasons for discounting this evidence, which provided support for a finding of disability," thus the matter was remanded to the Commissioner for further proceedings. *Id.* at 1097.

Here, upon careful review, I conclude that the ALJ's finding that Plaintiff's bipolar disorder was not severe is not substantially supported. In addition, the ALJ's failure to account for Plaintiff's mental impairments when formulating the RFC constitutes reversible error.

### A. The ALJ's Step Two Severity Findings

At step two, an ALJ considers the severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work and must last continuously for at least twelve months. *See* 20 C.F.R. § 404.1505(a). This step two inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 950 (11th Cir. 2014) (quoting *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). While the standard

for severity is low, the severity of an impairment "'must be measured in terms of its effect upon ability to work.'" *D'Andrea v. Comm'r of Soc. Sec. Admin.*, 389 F. App'x 944, 945 (11th Cir. 2010) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b); *Titles II & XVI: Med. Impairments That Are Not Severe*, SSR 85-28, 1985 WL 56856, at *4.

"Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Instead, the ALJ must only consider a claimant's impairments in combination, whether severe or not. *Id.* If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison*, 814 F.2d at 588). "[B]eyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling." *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-842 (11th Cir. 2014) (internal citations omitted). This means that as long as the ALJ considered Plaintiff's severe impairments in combination with his non-severe impairments, any potential error at step two is harmless. *Id.*

Here, at step two, the ALJ found Plaintiff had the severe physical impairment of degenerative disc disease. R. 13. The ALJ further found that Plaintiff's medically determinable mental impairments of ethanol abuse, personality disorder, and bipolar disorder, considered singly and in combination, did not rise to the severe level because they did not cause more than a minimal limitation in Plaintiff's ability to perform basic mental work activities. R. 14. In making this non-severity finding, the ALJ considered four broad areas of mental functioning, known as the "paragraph B" criteria. R. 14-16; 20 C.F.R. § 404.1520a(c)(3). These four areas consist of: (1) understanding, remembering, or applying information; (2) interacting with others; (3)

concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). If an ALJ finds that the degree of limitation in these four areas is "none" or "mild," then the ALJ will generally conclude that the mental impairment is not severe. 20 C.F.R. § 404.1520a(d)(1). "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a).

Here, the ALJ found that Plaintiff had "no limitation" in the first area of understanding remembering, or applying information, and had "mild limitation" in the other three areas of mental functioning. R. 14-16. To support these findings, the ALJ cited to a May 6, 2015 "Psychiatric Progress Note" indicating that Plaintiff's memory was intact for recent and remote events. R. 14 (citing R. 335). This two-page progress note reports that Plaintiff had "good" insight and judgment; "logical and linear" speech; and was alert, fully oriented with a consistent level of attention. R. 335. The progress note further reported that Plaintiff's "[m]ood is anxious, affect anxious" but that "[n]o impulsive behaviors reported," there were no perceptual disturbance or delusions, and Plaintiff's mental status/attitude was "[c]ooperative." *Id.* The ALJ also cited clinical impressions from a psychiatric evaluation on February 25, 2013, which diagnosed Plaintiff with "Bipolar Disorder, Mixed, Severe with Psychotic Features" and included a note that Plaintiff "has many supportive friends." R. 15 (citing R. 320).

The ALJ also relied on the observations of consultative examiner Cathy Colet, Psy. D., a Clinical and Forensic Psychologist who assessed Plaintiff on August 24, 2015, and October 29, 2018, respectively. R. 14-15 (citing R. 359-62, 429-32). During the August 2015 psychological examination, Plaintiff reported that he generally feels tired and frustrates easily. R. 361. However, Plaintiff experienced no problems following directions, responded well to questions posed, and

exhibited intact immediate, midrange and long-term abilities. *Id.* Plaintiff was "cooperative and motivated to perform to the best of his ability on the various tasks and questions presented to him." *Id.* While Plaintiff reported problems with maintaining focus and concentration, he "did not present as someone who can become easily confused." *Id.* Plaintiff "did not distract easily during his examination when asked to engage in specific assessments," like saying the alphabet, spelling "World" forwards and backwards, and counting by three's. *Id.* Dr. Colet noted no evidence to support legitimate auditory, visual, tactile, olfactory or somatic hallucinations. *Id.* Plaintiff denied visual hallucinations and did not appear to be responding to internal stimuli. *Id.* Dr. Colet diagnosed Plaintiff with "Unspecified Bipolar Disorder, by self-report and by history" and further concluded that "[i]t is difficult to determine if [Plaintiff] meets the criteria for PTSD or psychotic disorder without additional psychological testing." R. 362.

During the later October 2018 psychological examination, Plaintiff was cooperative and oriented to time, place, person, and situation. R. 14 (citing R. 431). Plaintiff again reported that he feels tired, frustrates easily, and has problems with focus and concentration. R. 431. Plaintiff felt "Not good." *Id.* Nonetheless, Plaintiff did not feel he is easily confused or experiences problems with comprehension. *Id.* Plaintiff's immediate, mid-range and long-term memory abilities were described as "fair." *Id.* A review of questions used to assess Plaintiff's reasoning and judgment abilities indicated average skills in both areas. *Id.* There was no evidence to support delusions, paranoia or auditory, visual, tactile, or somatic hallucinations. *Id.* Plaintiff experienced no problems following directions, he responded well to encouragement, and he was often willing to take a guess when he did not have a quick and ready answer to a task or question posed to him. *Id.* Dr. Colet diagnosed Plaintiff with "Bipolar Disorder, most recent episode depressed" and

opined that Plaintiff should undergo psychiatric evaluation to determine if medication management would apply. *Id.*

Upon review of the record, I find the ALJ's determination that Plaintiff had only mild limitations in the second, third, and fourth mental functional areas is not substantially supported. Like *Simon*, the ALJ here appears to have relied upon "snapshot" notes and reports of stability and progress in finding Plaintiff's bipolar disorder non-severe. *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th at 1106. The overall medical record included other pertinent evidence that ran directly contrary to these snapshot notes.

For instance, the second area of interacting with others "refers to the abilities to relate to and work with supervisors, co-workers, and the public." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(E)(2). In this area, the ALJ relied upon a single treating provider statement that Plaintiff had "many supportive friends" and observations that Plaintiff had a "cooperative" demeanor at three different examinations. R. 15 (citing R. 320, 335, 361, 431). However, the "many supportive friends" note from February 25, 2013 is inconsistent with another note from the same day indicating that Plaintiff presented "with history of bipolar disorder initially treated around the age of 15 or 16 … He presents today endorsing symptoms of racing thoughts, depressed mood, poor impulse control/'fits of rage,' and auditory hallucinations. He is concerned about not being able to "maintain/keep working." R. 313. Additionally, it was noted that Plaintiff presented as "anxious" with a reported depression level of an "8 or 9" with "mania (grandiose/racing thoughts)" and anger at a "4." R. 318. In addition, in connection with a later psychological risk assessment evaluation on April 22, 2015, "lack of resources/social support" was noted as one of Plaintiff's "[i]dentified suicide risk factors" and Plaintiff "Has no real support of living family" and "No real support other than AA meetings." R. 324, 327. While the record shows that Plaintiff reported

having supportive friends on one occasion in 2013, the record also contains countervailing information that the ALJ's decision does not fully address.

Moreover, the ALJ's reliance on Plaintiff's "cooperative" demeanor at his evaluations with Dr. Colet does not square with Dr. Colet's contemporaneous notes that Plaintiff reported "behavioral problems in school and at home while growing up," irritability, being easily agitated, "prefers to stay home," frustrating easily, and being impulsive. R. 360-61. At the conclusion of the August 2015 evaluation, Dr. Colet recommended that Plaintiff "engage in counseling and be evaluated by a psychiatrist on a regular basis." R. 362. Three years later, in October 2018, Plaintiff shared the same reported mental health struggles as before with the addition of "rage" as a new struggle. R. 430. At the conclusion of the October 2018 evaluation, Dr. Colet recommended that Plaintiff "engage in counseling services to address his current symptoms" and "undergo a psychiatric evaluation to determine if medication management would be applicable. R. 432. The ALJ relied on Plaintiff's "cooperative" demeanor at these two examinations but failed to address these other pertinent observations within the same evaluation record in determining that Plaintiff was only mildly limited in his interactions with others.

The third area of concentrating, persisting, or maintaining pace "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(E)(3). While the ALJ accurately cited to evidence showing that Plaintiff appeared "alert," "fully oriented," and not "easily confused" during his two psychiatric evaluations, these attributes must be considered in the context of "work activities." The Eleventh Circuit has noted that this distinction is significant: "Social Security regulators acknowledge that the ability to complete tasks in settings that are less demanding than a typical work setting 'does not necessarily demonstrate an applicant's ability to complete tasks in the context of regular

employment during a normal workday or work week.'" *Schink*, 935 F.3d at 1266 (citing 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(C)(6)(b)).  The ALJ here relied upon Plaintiff's ability to follow directions and his demonstrated ability to complete specific assessments while not distracting easily.  R. 15.  However, Plaintiff's ability to say the alphabet, spell a basic word forwards and backwards, and count by three's at an assessment "says little to nothing about his ability to perform simple tasks on a full-time basis, his ability to respond appropriately to the stress of customary work pressures, his ability to interact with others in the workplace, or his ability to concentrate, persist, and maintain pace." *Simon*, 7 F.4th at 1107–08.

The fourth area of adapting or managing oneself "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting."  20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(E)(4).  Regarding this fourth area, the ALJ found that Plaintiff had "no perceptual disturbance or delusion . . . no suicidal or homicidal intent . . . reported no impulsive behaviors" and that there was "no evidence to support legitimate auditory, visual, tactile, olfactory or somatic hallucinations."  R. 15.  However, as discussed below, the record reveals examples of situations where Plaintiff is unable to regulate his emotions, control his behavior, or maintain his well-being.  R. 416 ("explosive temper" leading to throwing a plate which cut an individual's hand and led to arrest); R. 420, 427 (reporting "explosive temper").  I am unable to discern—and the ALJ did not attempt to explain—why the evidence running contrary to the ALJ's mild limitation findings was either not persuasive or credible.

While acknowledging that Plaintiff was treated at New Horizon of the Treasure Coast due to complaints of depression and psychosis on November 16, 2017, the ALJ reasoned that:

> this visit was done in the context of the claimant trying to get back on disability. Since that visit, the claimant has had no ongoing psychiatric treatment. Contrary to the claimant's testimony, there is no evidence that claimant was not allowed to return to New Horizon for one year. In fact, the claimant did not even seek any

>other treatment until he apparently returned to New Horizon in October 2019, shortly before the instant hearing. His timing of treatment is suspicious and raises questions about the validity of his complaints. In light of absence of any consistent treatment, the claimant's ability to function, and the relatively benign findings on his psychological consultative examination, his bipolar is not severe.

R. 15-16 (citing R. 420). This reasoning is not borne out by the record. The ALJ plainly failed to account for additional visits to New Horizon in 2017 that suggest deterioration of Plaintiff's mental functioning. According to an examination note from November 8, 2017, Plaintiff sought treatment to address his depression, "explosive temper," and auditory hallucinations. R. 425. Plaintiff reported that he "recently has had[] thoughts of killing one of his tenants that makes noises when she is drunk in the early hours of the morning." R. 427.

Eight days later, during an evaluation on November 16, 2017, Plaintiff described his mood as anxious with daily mood swings and "explosive temper … I am deadly" including reference to killing one of his tenants. R. 420. A note from this evaluation identified Plaintiff's "limited social support" and described Plaintiff's demeanor as being "Entitled, Dramatic, Uncooperative, Demanding, [and] Becomes angry when obtaining history and then provides little information." R. 423. The treating provider also reported that Plaintiff was "Angry / Hostile, Anxious" and "[s]uspicious, condescending, and demeaning" R. 423-24. The next day, on November 17, 2017, Plaintiff returned to New Horizons where he reported being anxious, hearing noises that were not there, feeling hopeless, and being potentially dangerous due to his explosive temper. R. 418. Plaintiff noted suicidal thoughts "crossing my mind" and that he "really only got two friends in my life period . . . I have plenty of acquaintances." *Id.* On December 12, 2017, Plaintiff returned to New Horizons where he reported a recent arrest due to his temper getting the best of him and stated that "it is very important that I get this disability claim because it is getting harder and harder

for me to function around other people." R. 416. These reports by Plaintiff coincided with his hearing testimony that he had to leave work "several times" due to "fits of rage." R. 48-49.

The ALJ's statement that the November 16, 2017 visit was Plaintiff's last visit until October 2019 is plainly wrong as the record shows that Plaintiff visited New Horizons at least twice more between these two dates. R. 418-19 (November 17, 2017 visit), R. 416-17 (December 15, 2017 visit). More importantly, the ALJ inexplicably fails to account for other key evidence from these additional visits.

Under the totality of circumstances, I find that the ALJ's "paragraph B" criteria findings and conclusion that Plaintiff's bipolar disorder was non-severe at step two are not substantially supported. It is possible that any step two error could be found harmless if the ALJ had properly proceeded through the sequential process. However, as discussed below, the ALJ failed to do so.

### B. The ALJ's RFC Assessment

Before step four, the ALJ must assess the claimant's RFC, which is defined as the most a claimant can still do despite his limitations. 20 C.F.R. § 404.1545(a). The RFC consists of a claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [a claimant] can do in a work setting." 20 C.F.R. § 404.1545(a). An ALJ must "assess and make a finding about [the claimant's RFC] based on all the relevant medical and other evidence" in the case. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), (3). In other words, the ALJ must consider *all* of the claimant's medically determinable impairments, including those that are not "severe." 20 C.F.R. § 404.1545(a)(2); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019).

The Eleventh Circuit's *Schink* decision is especially instructive here. In *Schink*, the Eleventh Circuit remanded the case to the Commissioner, in part, because, "[s]evere or not, the

ALJ was required to consider Schink's mental impairments in the RFC assessment but evidently failed to do so." *Schink.*, 935 F.3d at 1269. As part of the ALJ's RFC assessment, the ALJ discussed Schink's physical impairments at length, but only mentioned that he had bipolar disorder without any real discussion of how this impairment affected his ability to work. *Id.* Even assuming the ALJ considered Schink's mental impairments by implicitly finding they posed no significant limitations on his work-related mental impairments, the Eleventh Circuit still found remand necessary. This is because an ALJ's "'failure ... to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal' in its own right." *Id.* (citation omitted).

Here, exactly as was the case in *Schink*, the ALJ explained at step two that the "limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." R. 16; *Schink*, 935 F.3d at 1269. And the ALJs in both *Schink* and here acknowledged that the "mental residual functional capacity assessment used at steps 4 and 5 ... *requires a more detailed assessment*." R. 16. (emphasis added); *Schink*, 935 F.3d at 1269. They did not then conduct that more detailed assessment, however.

Here, the ALJ found that Plaintiff had the RFC to perform the full range of medium work as defined in 20 C.F.R. § 404.1567(c). R. 16. The ALJ did not include any mental limitations in the RFC assessment. *Id*. Like *Schink*, the ALJ here discussed Plaintiff's physical impairments at length, but only mentioned in two sentences Plaintiff's reports of racing thoughts and anger due to bipolar disorder without any real discussion of how this impairment affected Plaintiff's ability to work. R. 17. The ALJ's opinion also included the following finding:

> The undersigned finds the opinions of the State agency medical consultants Dr. Max Kattner, Dr. Candance Mihm, Dr. Kathryn Bell and Dr. Mose Izuegbu, who

>gave the claimant a light residual function capacity with severe mental limitations, are not persuasive.

R. 18 (citing R. 66-82, R. 84-100). The ALJ stated that the above referenced opinions "are NOT supported by or consistent with physical examination findings and treatment notes or the objective findings on MRI. Therefore, they are not persuasive." R. 18 (citing R. 311-68, R. 381-441, R. 444-495). This finding by the ALJ is out of place and entirely unclear. Nowhere in the opinion does the ALJ further explain this reasoning or articulate in any sort of logical way why these discounted opinions were not persuasive.

The bottom line is that the Eleventh Circuit has made crystal clear that whether severe or not, an ALJ must explicitly consider Plaintiff's medically determinable mental impairments when assessing the RFC. The ALJ here failed to do so.[3] The ALJ provided no real assessment of how Plaintiff's mental impairments—including bipolar disorder—affected his ability to work. There is no logical bridge between the ALJ's finding that Plaintiff had mild impairments in three of the four areas of mental functioning and yet no limits whatsoever in the mental functions associated with work. For all the above reasons, the ALJ assessment was improper and remand is warranted.

## II. Plaintiff's Remaining Argument

Plaintiff's remaining argument is that Plaintiff's bipolar disorder met the criteria for an agency-listed impairment. Because remand is warranted based on the ALJ's unsupported step two findings and deficient RFC assessment at step four, which will require the ALJ to reassess the

---

[3] After noting the ALJ's generalized, non-specific statements about considering all of Plaintiff's symptoms to determine Plaintiff's RFC and the ALJ's passing reference to Plaintiff's testimony about his bipolar disorder, Defendant argues "[a]lthough the ALJ did not further discuss Plaintiff's bipolar impairment in her RFC analysis, the ALJ did explain in her decision why his mental impairments were non-severe." DE 39 at 14. Defendant cites to three out-of-circuit, non-binding decisions in support of this argument. *See id*. In light of the binding Eleventh Circuit precedent cited in this report regarding the need for an ALJ to account for mental impairments in the RFC assessment, I find this argument by Defendant entirely unpersuasive.

entire record on remand, this argument need not be addressed. *Demench v. Sec'y of Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (declining to address plaintiff's remaining arguments due to conclusions reached in remanding the case); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n. 2 (11th Cir. 1986) (stating that it is unnecessary to review other issues raised on appeal where remand is required and such issues will likely be reconsidered in the subsequent proceedings).

## CONCLUSION AND RECOMMENDATION

Upon consideration of the parties' submissions and the administrative record, I find that Defendant's administrative decision is not supported by substantial evidence. The overall record shows that the ALJ's decision does not appropriately consider Plaintiff's bipolar disorder, which featured prominently in his documented medical history. The ALJ also failed to properly consider Plaintiff's mental impairments in determining Plaintiff's RFC and ability to return to his past relevant work. The ALJ did not build an accurate and logical bridge from the available evidence to the ultimate conclusion. Accordingly, I find that Defendant's final decision is not based on substantial evidence and should be remanded for further proceedings.

I thus respectfully **RECOMMEND** that Defendant's final administrative decision be **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings; that Plaintiff's Motion for Summary Judgment [DE 34] be **GRANTED**; that Defendant's Motion for Summary Judgment [DE 39] be **DENIED**; and that a final judgment be entered in Plaintiff's favor. On remand, the Commissioner should be directed to reassess the entire record, reconsider the evidence, properly evaluate Plaintiff's mental impairments, and provide sufficient reasons with citation to readily-identifiable evidentiary support.

## NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District Judge Aileen M. Cannon. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016). **Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within five (5) days of the date of this Report and Recommendation.**

 **DONE AND RECOMMENDED** in Chambers at Fort Pierce, Florida, this 23rd day of May, 2022.

_____
SHANIEK M. MAYNARD
U.S. MAGISTRATE JUDGE